UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANTA CLARA CRUZ-ORTIZ,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-03738-JHC

ORDER

## I
## INTRODUCTION

This matter comes before the Court on Santa Clara Cruz-Ortiz's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

## II
## BACKGROUND

Petitioner, a citizen of Guatemala, was apprehended in November 2019 by a United States Border Patrol agent near Andrade, California. Dkt. ## 1 ¶ 21; 10-3 at 4. On December 5, 2019, U.S. Immigration and Customs Enforcement (ICE) issued Petitioner a Notice to Appear, charging her as a removable noncitizen "present in the United States who has not been admitted

or paroled" under Section 212(a)(6)(A)(i) of the INA. Dkt. # 10-1 at 2. Petitioner was released on an order of her own recognizance (OREC) on the same day. Dkt. # 10-2. Petitioner lived in Everglades City, Florida, from the time of her release until November 2020, when she moved to Mason County, Washington. Dkt. ## 1-2 at 15; 4 at 6. From November 2020 until April 2026, Petitioner worked as a harvester in Shelton, Washington. Dkt. ## 1 ¶ 28; 4 at 6. Petitioner has two minor children, one of whom is a United States citizen born in Washington in 2021. Dkt. ## 1 ¶ 27; 1-2 at 99; 4 at 4–5. She has no criminal history. Dkt. # 10-3 at 4.

Respondents allege that, beginning in June 2022, Petitioner was enrolled in "routine in-person kiosk office check-ins" as a condition of her release. Dkt. ## 8 at 4; 9 ¶ 7. According to Respondents, Petitioner "failed to report for four consecutive appointments" in 2024 and 2025. Dkt. ## 8 at 4, 6–8; 10-3 at 4. Petitioner explains that "she often did not have sufficient cellular service to receive the alert or to submit the photograph" while she was working in fields as a harvester. Dkt. # 1 ¶ 4. In April 2024, Petitioner's check-in frequency was "modified to 4 months as a result" of an alleged missed report. Dkt. # 10-3 at 4. In December 2024, her check-in frequency was further lengthened to 6 months after she allegedly failed to report in again. *Id.* In June 2025, following Petitioner's last missed check-in, her case was referred to ICE's Enforcement and Removal Operations (ERO) division. *Id.*

On April 29, 2026, ICE ERO Seattle conducted a "targeted enforcement operation" in Shelton, Washington. Dkt. # 10-3 at 3. Before the operation, ERO Seattle had "identified several targets who were illegally present in the United States and issued I-200s" in preparation for the operation. *Id.* Petitioner claims that she was not one of the targets of this operation; Respondents do not dispute this assertion. Dkt. ## 1 ¶ 37; 10-3 at 4 (noting that Petitioner "was arrested without an administrative warrant"). Respondents state that, during the course of the April 2026 enforcement operation, Petitioner was apprehended while attempting to flee from

ICE officers. Dkt. # 8 at 1, 7. Following Petitioner's arrest, ERO confirmed her identity, revoked her OREC, and issued a Form I-200 warrant for her arrest. Dkt. ## 9 ¶ 9; 10-3 at 4–5; 10-4 at 2. Petitioner was transferred to the Northwest ICE Processing Center, where she remains detained. Dkt. ## 1 ¶ 6; 10-3 at 5.

On July 13, 2026, Petitioner filed an application for asylum and withholding of removal. Dkt. # 4. After a hearing, the presiding Immigration Judge (IJ) denied Petitioner's application. Dkt. # 1 ¶ 54. Petitioner timely appealed the IJ's denial of her application to the Board of Immigration Appeals; her appeal remains pending. Dkt. ## 1 ¶ 54; 1-2 at 110; 8 at 4.

Petitioner alleges that: (1) her re-detention without notice, a pre-deprivation hearing, or any finding of changed circumstances violated her right to procedural due process under the Fifth Amendment of the U.S. Constitution; (2) the revocation of her release without a material change in circumstances violated 8 U.S.C. § 1226(b), 8 C.F.R. § 236.1(c)(9), and binding agency precedent; (3) her detention is unsupported by any individualized finding of danger or flight risk and therefore violates her right to substantive due process under the Fifth Amendment; (4) the Government's reversal of its 2019 decision to release Petitioner on OREC violates the INA; and (5) Petitioner's warrantless arrest violated the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8(c). Dkt. # 1 ¶¶ 61–98. Petitioner seeks her immediate release from detention, an order prohibiting re-detention absent notice and a pre-deprivation hearing, related declaratory, injunctive and alternative relief, and leave to seek attorney fees and costs. Dkt. ## 1 at 30–31.

## III
## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c).

"The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

A. Statutory Authority Governing Detention

Petitioner claims that her detention is governed by 8 U.S.C. § 1226(a) due to her apprehension "in the interior" of the United States over six years after her initial entry. Dkt. # 1 ¶ 86 (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026)) ("The Ninth Circuit has held that § 1225(b)(2)(A) applies only to noncitizens seeking entry at the border, and that noncitizens apprehended in the interior after entering without inspection are detained under § 1226(a)."). Respondents counter that the holding of *Rodriguez Vazquez* does not apply to Petitioner, who was initially apprehended by CBP near Andrade, California near the United States-Mexico border. Dkt. # 8 at 6. Instead, Respondents submit that Petitioner is an "applicant for admission" and is therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.*

The record shows that Petitioner was apprehended near the border shortly after her arrival in the United States. Dkt. ## 4 at 4; 10-3 at 3. Respondents are therefore correct that Petitioner "falls outside of [the *Rodriguez Vazquez*] opinion's holding." *Hernandez Rangel v. Scott*, 2026 WL 3135562, at *3 n.4 (W.D. Wash. Oct. 20, 2026). Yet Section 1226(a) governs Petitioner's re-detention for independent reasons. *Id.* at *3. As Respondents acknowledge, courts in this District have repeatedly found that "individuals previously released on an OREC are subject to detention under 8 U.S.C. § 1226(a)," not 8 U.S.C. § 1225(b). Dkt. # 8 at 5–6 (citing *Balwan v. Bondi*, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026); *Martinez Hernandez v. Mullin*, 2026 WL 1998571, at *2 (W.D. Wash. July 10, 2026)). This principle extends to individuals who were initially apprehended near the border, released on an OREC, and later re-detained in the interior of the United States. *See, e.g.*, *Herrera Gomez v. Wamsley*, 2026 WL 279966, at *2

(W.D. Wash. Feb. 3, 2026) (concluding that Section 1226(a) governed the re-detention of a petitioner initially encountered at the border and released on an OREC); *Hernandez Rangel*, 2026 WL 3135562, at *3 (reaching the same conclusion following the Ninth Circuit's decision in *Rodriguez Vasquez*).

B. Due Process Clause

Petitioner contends that she is entitled to habeas relief because her arrest and re-detention without prior notice or a pre-deprivation hearing violated her Fifth Amendment right to procedural due process. Dkt. # 1 ¶¶ 61–70. The Fifth Amendment prohibits the federal government from depriving any person "of life, liberty, or property, without due process of the law[.]" U.S. Const. amend. V. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. at 335, "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1206 (9th Cir. 2022).[1]

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." 424 U.S. at 335. As Respondents acknowledge, "[c]ourts have recognized that an individual released into the community on an OREC has a substantial liberty interest." Dkt. # 8 at 8 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025); *Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2–3 (W.D. Wash. Nov. 6, 2025)). Petitioner's liberty interest strengthened over the six years that followed her release. During this period, in reliance on Respondents' affirmative grant of liberty, Petitioner moved from Florida to Washington, commenced long-term employment as a harvester, and raised her daughter, who was born in Shelton County in 2021. Dkt. ## 1 ¶¶ 27–28; 1-2 at 99; 4 at 4–5.

Respondents concede that this factor favors Petitioner, given her "significant private interest in remaining free from physical detention," but argue that the "practical weight" of this interest is "tempered by the specific history of noncompliance that preceded re-detention." Dkt.

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In doing so, the Court recognized that: (1) other circuits have applied *Mathews* to due process challenges to immigration proceedings; (2) the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings"; and (3) the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*. at 1206. More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, at *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, at *2–4 (W.D. Wash. Dec. 24, 2025) (same). The parties agree that *Mathews* applies to Petitioner's re-detention. *See* Dkt. ## 1 ¶ 65; 8 at 7–10.

# 8 at 8. However, while Petitioner's compliance history "may be relevant to *the Government's* interest, it bears no relationship to *the Petitioner's* interest in remaining free from confinement." *Bayona Corzo v. Scott*, 2026 WL 3181727, at *3 (W.D. Wash. Oct. 23, 2026) (citations omitted) (emphases in original) (finding the petitioner's criminal history irrelevant to analysis of first *Mathews* factor). And "even assuming Petitioner's liberty interest is diminished by . . . the alleged violation of the OREC" or her attempted flight during the arrest, her interest in remaining free from confinement remains "the core of the liberty protected by the Due Process Clause." *Hernandez Rangel*, 2026 WL 3135562, at *5 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The first *Mathews* favor therefore favors Petitioner.

2. Risk of Erroneous Deprivation and Probable Value of Procedural Safeguards

The second *Mathews* factor considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. "[T]he central issue here is the process by which re-detention occurred, not whether it was warranted." *Pedro Garcia Radillo v. Scott*, 2026 WL 2168044, at *6 (W.D. Wash. July 28, 2026) (quoting *Gill v. Noem, et al.*, 2026 WL 686134, at *3 (W.D. Wash. Mar. 11, 2026).

Respondents submit that this factor favors the government because the record here "supplies concrete, contemporaneous evidence of noncompliance"—namely, "four documented failures" to report to ICE, the two adjustments to Petitioner's reporting frequency, the referral of Petitioner's case to ERO, and Petitioner's flight from ICE officers during the April 2026 targeted enforcement operation which resulted in her arrest and re-detention. Dkt. # 8 at 8. Respondents argue that "[a]dditional pre-deprivation process would have limited probable value" because these "[o]perative facts were already established at the time of the arrest," and a pre-deprivation hearing "would not have altered the existence of those facts or the assessment of flight risk they

support." *Id.* at 9. This position conflates the role of the agency with that of a neutral decisionmaker adjudicating a pre-detention hearing: it is the latter, not the former, that assumes the role of weighing the "operative facts" necessary to assess flight risk. ICE's mere realization of a noncitizen's non-compliance with release conditions does not unilaterally authorize detention without a hearing. *E.A. T.-B.*, 795 F. Supp. 3d at 1322 ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

The Court turns to the "operative facts" that Respondents submit obviated the need for a pre-deprivation hearing, beginning with Petitioner's "four documented failures" to report to ICE. Dkt. # 8 at 8–9. A pre-deprivation hearing would have afforded Petitioner an opportunity to offer explanations for the missed check-ins or present other mitigating factors rebutting the Government's presumption of flight risk. Respondents next cite the progressive lengthening of Petitioner's reporting intervals and the later referral of her case to ERO in June 2025. But they "offer no explanation for why it took ICE so long to act" before re-detaining Petitioner. *Victoriano v. Mullin*, 2026 WL 1194596, at *6 (W.D. Wash. May 1, 2026) (quoting *Kumar v. Noem*, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026)). Indeed, the ten-month delay between Petitioner's final violation and her April 2026 re-detention suggests that "ICE did not deem these alleged technical violations sufficiently serious to warrant a return to custody." *Id.*

Respondents insist that Petitioner's "[f]light from law enforcement after a vehicle stop is direct, particularized evidence of flight risk," not a "post-hoc rationalization assembled for litigation." Dkt. # 8 at 8. It is true that immigration judges making bond determinations are directed to consider "attempts by [a noncitizen] to flee prosecution or otherwise escape from authorities." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). Yet to sustain a flight risk determination, factors considered by an immigration judge must "rationally bear on a

noncitizen's likelihood to appear for immigration proceedings." *Hernandez v. Hernandez*, 2026 WL 1723680, at *6 (W.D. Wash. June 15, 2026) (citing *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976)). To that end, several courts in this District have concluded that allegations of attempted flight during an arrest encounter do not, without more, "establish a rational connection to present-day flight risk." *Hernandez*, 2026 WL 1723680, at *8 (citing *Loya Medina v. Hernandez*, 2026 WL 1260848, at *7–8 (W.D. Wash. May 7, 2026)). The court in *Hernandez* rejected an immigration judge's flight risk determination premised on a "conclusory" assertion in a Form I-213 that the petitioner had "attempted to elude" immigration officials, notwithstanding descriptions of Petitioner's compliance elsewhere in the record. 2026 WL 1723680, at *8. Given the posture of this case, the Court need not speculate on whether the Form I-213 in this case would have supported an IJ's flight risk finding had Petitioner received a bond hearing or custody redetermination. At the very least, however, the recent scrutiny of similar flight risk determinations in this District undercuts Respondents' position that these kinds of allegations establish "operative facts" sufficient to establish flight risk without the need for a pre-deprivation hearing.

Respondents' position also broadly presumes that the Government "maintains a base level of accuracy and prudent record-keeping." *Blanco Cruz v. Warden of Northwest Ice Processing Ctr. et al.*, 2026 WL 3135091, at *4 (W.D. Wash. Oct. 20, 2026); *see also United States v. Strickland*, 601 F.3d 963, 976 (9th Cir. 2010) (Berzon, J., dissenting) ("As we have recognized, elementary oversights in data entry can result in unconstitutional deprivations of liberty."). Unfortunately, several inconsistencies and discrepancies impair the record. For example, the Form I-213 prepared at the time of Petitioner's re-detention in April 2026 indicates that she was arrested "for violations of the conditions of her release" on March 18, 2026, over a month before the April 2026 enforcement operation that resulted in her re-detention. Dkt. # 10-3

at 4–5. The Form I-213 also contains several discrepancies regarding Petitioner's children. *Compare* Dkt. # 10-3 at 3 (stating that Petitioner has "children or dependents") *with id.* at 4 (incorrectly specifying that Petitioner has "no U.S. citizen children" and instead identifying "2 children from Guatemala"). Far from reconciling these inconsistencies in the record, Respondents' pleadings instead exacerbate them by introducing further disparities. *Compare* Dkt. # 8 at 4, 6–8 (reflecting missed check-ins on, *inter alia*, April 16, 2024, June 16, 2025, and July 17, 2025) with Dkt. # 10-3 at 4 (Form I-213 documenting missed check-ins on, *inter alia*, April 17, 2024 and June 17, 2025). Because the Court "cannot determine basic and crucial facts from this case" from the record submitted by the Government, it "must conclude that proceeding to detain Petitioner without a pre-deprivation hearing risks the same types of errors as made here." *Blanco Cruz*, 2026 WL 3135091, at *4. Accordingly, the second *Mathews* factor favors Petitioner.

3. Government Interest

The third *Mathews* factor considers the Government's interest in re-detaining Petitioner. 424 U.S. at 335. This includes "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Courts in this District have repeatedly found that "the Government's interest in re-detaining non-citizens previously released without a hearing is low[.]" *Fiston v. Bondi*, 2026 WL 926064, at *4 (W.D. Wash. Apr. 6, 2026) (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1324). Again citing Petitioner's record of alleged non-compliance, Respondents argue that "[r]equiring a pre-deprivation hearing in every case of re-detention after documented reporting failures and flight would impose significant administrative burdens on ICE and the immigration courts without a corresponding reduction in the risk of error on these facts." Dkt. # 8 at 9. As discussed, however, the contradictory record before the Court strongly suggests that a pre-deprivation hearing would have significantly reduced the risk of erroneous

deprivation in this case. Respondents' interest in "ensuring appearance" does not justify detention without notice and a hearing. Dkt. # 8 at 9–10. Petitioner apparently cooperated with enforcement officials in supplying her Guatemalan ID, was taken into custody "without incident," and filed an application for asylum and withholding of removal while in detention. Dkt. ## 4; 10-3 at 4. Additionally, Respondents' professed interest in "enforcing the terms of release" is undercut by the Government's progressive lengthening of Petitioner's reporting periods following missed check-ins, along with their nearly year-long delay in re-detaining Petitioner after her latest reporting lapse. Dkt. ## 8 at 9; 10-3 at 4. The third *Mathews* factor therefore weighs in favor of Petitioner.

4. Weighing the *Mathews* Factors

In sum, the three *Mathews* factors favor Petitioner. The Court thus concludes that the Government's re-detention of Petitioner without prior notice or opportunity to be heard violated her constitutional right to procedural due process under the Fifth Amendment. As a result, Petitioner has proven by a preponderance of the evidence that she "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c).

C. Remedy

Having concluded that Petitioner's re-detention violated the Due Process Clause, the Court must determine the appropriate remedy. Respondents request that the Court order a bond hearing under 8 U.S.C. § 1226(a) so that an immigration judge "can consider the documented reporting failures and flight and determine whether Petitioner is a flight risk." Dkt. # 8 at 11. Respondents' proposed remedy is inadequate. "Because the constitutional violation is the absence of *pre-deprivation process*, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before [the] unlawful detention."

*Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original). Ordering a hearing while Petitioner remains detained "would not adequately vindicate [her] rights; it would reward the government for detaining first and asking questions later." *Id.* Accordingly, the Court concludes that immediate release is the appropriate remedy.[2]

D. Petitioner's Other Claims

Because the Court grants the petition on procedural due process grounds, it does not reach Petitioner's remaining statutory and constitutional claims. *Perez Tinoco v. Hermosillo*, 2026 WL 2174762, at *4 (W.D. Wash. Feb. 12, 2026). This Order does not prevent Petitioner from making these arguments in a future petition.

## IV
## Conclusion

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

Petitioner also asks for leave to request attorney fees and costs under the Equal Access to Justice Act (EAJA). *See* 28 U.S.C. § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B). Accordingly, Petitioner may file a motion with such request no later than November 27, 2026.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

[2] Petitioner separately requested an order prohibiting her transfer outside this District during the pendency of this habeas action. Dkt. # 1 ¶ 98. This request is mooted by the entry of this Order. *Toribio v. Scott*, 2025 WL 3906472, at *2 (W.D. Wash. Dec. 31, 2025).

Dated this 28th day of October, 2026.

John H. Chun
John H. Chun
United States District Judge